## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

ANDREI M. MIHUT,

    Plaintiff/Appellee,

VS.

MARIA G. MIHUT,

    Defendant/Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

FILED

December 28, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

Shelby Chancery No. D29487-1 R.D.

Appeal No. W1998-00601-COA-R3-CV

APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE WALTER L. EVANS, JUDGE

**JEFFREY JONES**
Memphis, Tennessee
Attorney for Appellant

**T. TARRY BEASLEY, II**
Memphis, Tennessee
Attorney for Appellee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

Maria G. Mihut ("Mrs. Mihut") has appealed from the trial court's determination regarding child custody during a divorce proceeding between Mrs. Mihut and Andrei M. Mihut ("Mr. Mihut"). Based upon the following, we affirm the decision of the trial court.

**Facts and Procedural History**

This divorce and child custody action was originally commenced on May 5, 1998, by the filing of a complaint for divorce by Mr. Mihut. After a hearing, the trial court granted Mr. Mihut temporary custody of the children. On October 27, 1998, the court granted Mr. Mihut a final divorce decree and awarded him permanent custody of the children. Mrs. Mihut was ordered to pay child support and was granted liberal visitation rights. Mrs. Mihut appeals based on the following facts.

Mr. and Mrs. Mihut were married in Santa Ana, California, on November 14, 1989. They had two minor children, Jeffrey, born December 29, 1989, and Andrea Marie, born January 9, 1996.[1] During the course of the Mihut's marriage, the family relocated to Shelby County, Tennessee. At the time this cause of action arose, Mrs. Mihut was employed full-time. Mr. Mihut worked at home trying to establish a new business and taking care of the children.

The Mihuts began experiencing marital problems in 1997. Mrs. Mihut did not offer an explanation for these problems. However, according to Mr. Mihut, these problems resulted from Mrs. Mihut's alcohol and drug use and her alleged involvement in a lesbian relationship. The couple sought marital counseling that was ultimately unsuccessful.

As a result of the rapidly deteriorating relationship, Mr. Mihut petitioned for and was granted a restraining order preventing either party from removing the children from the area on May 4, 1998. Subsequently, Mr. Mihut filed a complaint for divorce in the Chancery Court. In his complaint, Mr. Mihut alleged irreconcilable differences and inappropriate

---

[1] At the time of the trial court proceedings, Jeffrey was age eight and Andrea was two and a half years old.

marital conduct by Mrs. Mihut as grounds for divorce. An amended complaint by Mr. Mihut sought custody of the two children. Mrs. Mihut did not counterclaim for divorce, but she did seek custody of the children in her answer.

A temporary custody hearing was held before Chancellor Neal Small on July 28, 1998. At this hearing, Mr. Mihut presented six live witnesses and one witness via deposition to testify on his behalf.[2]  Mr. Mihut testified regarding Mrs. Mihut's use of alcohol and drugs. Specifically, Mr. Mihut claimed that Mrs. Mihut drank regularly and sometimes to excess in the presence of the children. Mr. Mihut testified that Mrs. Mihut drove while intoxicated and at times did so with Andrea, the Mihut's daughter, in the car. In addition, a Shelby County deputy testified that a search of Mrs. Mihut's car by police revealed a package containing marijuana.

Mr. Mihut  also testified about his relationship with the children and Mrs. Mihut's alleged carelessness and apathy regarding the children. According to Mr. Mihut, he was the children's principal care-giver. He claimed that both his son and daughter relied upon him for everyday necessities such as food, clean clothes, and transportation. Mr. Mihut also claimed that Mrs. Mihut did not spend time with the children and was careless when she was with them. Specifically, Mr. Mihut alleged that Mrs. Mihut left a plugged-in iron on the bed and floor of a bedroom, resulting in scorched bedding and carpet on two separate occasions.

Several other witnesses testified about Mr. Mihut's relationship with the children. The essence of this testimony was to show that Mr. Mihut had a very loving and close relationship with his children, especially Andrea.  In addition, several of the witnesses stated that Mr. Mihut was a good parent and was best qualified to take care of the children. Although most of the witnesses knew and had been friends with both parties, no witness recommended that Mrs. Mihut be given custody.

---

[2]Mr. Mihut's witnesses included business associates, family friends, and the husband of one of Mrs. Mihut's cousins.  The deposition of Mr. Mihut's private investigator was also considered.

Mrs. Mihut testified regarding Mr. Mihut's allegations and her relationship with the children. Mrs. Mihut denied she abused alcohol. She also testified that the reason she did not spend much time with the children was because they were always with Mr. Mihut. Mrs. Mihut claimed that the witnesses who testified on behalf of Mr. Mihut did not know her well enough to make a recommendation. In addition, Mrs. Mihut said that Andrea was responsible for the iron burns on the bed and floor. No other witnesses testified on behalf of Mrs. Mihut.

After hearing the testimony of the parties and witnesses, the court granted Mr. Mihut temporary custody of the children on July 28, 1998. Pursuant to the custody order, Mrs. Mihut was given permission to remain in the marital home pending the divorce. A hearing regarding the divorce and final custody determination was set for September 9, 1998. Due to a continuance the hearing was not held until October 12, 1998. The events between the temporary custody hearing and the final custody hearing are at issue on this appeal.

On the Monday after the temporary custody ruling, Mr. Mihut and the children moved out of the marital home and into a hotel room. According to Mr. Mihut, the move was prompted by Mrs. Mihut's erratic behavior and the atmosphere it created. For example, Mrs. Mihut apparently threatened Mr. Mihut with a knife on two occasions, once in the presence of Andrea. Mr. Mihut and the children continued to reside in the hotel pending the divorce hearing.

During this period, Mrs. Mihut successfully sought the court's permission to have the children evaluated by a counsellor. As a result, the children were seen by Dr. Susan Ackerman Ross, a psychologist. Dr. Ross, whose testimony was taken by deposition on October 8, 1998, stated that she had two sessions with the children, for 45 minutes at each session. Dr. Ross stated that both children looked healthy, but that Jeffrey has some emotional problems and exhibited aggressive behavior. In addition, Dr. Ross's secretary observed Jeffrey take his fist and repeatedly punch his sister in the vaginal area and separate her legs and stick his face into her vaginal area. Dr. Ross did not make a

4

recommendation regarding custody but did recommend that Jeffrey receive counseling.

The divorce and final custody hearing was held on October 12, 1998, before Chancellor Walter Evans.[3]  The divorce was uncontested, so the primary issue regarded custody of the children.  The court reviewed the testimony from the temporary custody hearing, as well as hearing further testimony by both Mr. and Mrs. Mihut, a witness for Mrs. Mihut, a witness for Mr. Mihut, and the depositional testimony of Dr. Ross.

In addition to his previous allegations, Mr. Mihut testified about Mrs. Mihut's failure to maintain the house and yard.  Mr. Mihut presented photographs detailing the deterioration of the family home that occurred after he moved out.  The photographs revealed piles of garbage bags in the yard, some of which had been torn open and scattered by the family dog. The photos also showed stains on the carpet, a roach, and a generally unkept house.

Mr. Mihut also testified that Mrs. Mihut exhibited inappropriate behavior in front of the children.  Specifically, Mr. Mihut alleged that Mrs. Mihut was involved in an extramarital relationship with a lesbian ("Olga").  According to Mr. Mihut, Mrs. Mihut had sexually explicit telephone conversations with Olga in the presence of the children.  In addition, Mrs. Mihut had homoerotic literature in the car she used to transport the children.  Mr. Mihut also alleged that during marital counseling sessions, Mrs. Mihut admitted to the occasional use of marijuana.

Mrs. Mihut denied Mr. Mihut's allegations of excessive drinking, marijuana possession or use, explicit sexual talk, and homosexual literature around the children. In addition, Mrs. Mihut claimed that the condition of the house was a result of Mr. Mihut's removal of cleaning supplies and the cancellation of the garbage service. Mrs. Mihut testified that Mr. Mihut was forcing the children to sleep with him in the same bed at night. Mrs. Mihut also presented the deposition testimony of Dr. Ross in regard to Jeffrey's

_____

[3]Chancellor Evans assumed the bench on September 1, 1998, and heard all matters thereafter.

behavior.

After considering all of the testimony, the trial court granted both a divorce and custody of the children to Mr. Mihut, with liberal visitation to Mrs. Mihut. The court specifically disregarded the allegations of Mrs. Mihut's drug and alcohol abuse and alleged lesbian relationship in making the custody determination. The court based its determination on the close relationship between Mr. Mihut and the children and the fact that he had devoted more time and effort to their upbringing. Thereafter, Mrs. Mihut filed a Notice of Appeal.

On appeal, Mrs. Mihut asserts two issues. First, that the trial court erred by failing to make a referral sua sponte of potential allegations of sexual abuse concerning the children to the Juvenile Court pursuant to Tenn. Code Ann. § 37-1-605 and Tenn. Code Ann. § 37-1-403. In addition, Mrs. Mihut asserts that the trial court erred in failing to delay or hold in abeyance any determination of final custody pending investigation of allegations of abuse.

**Analysis**

In the trial court, the primary factor for determining child custody is the best interest of the children. Gaskill v. Gaskill, 936 S.W.2d 626 (Tenn. App. 1996); See Tenn. Code. Ann. § 36-6-106. Child custody cases are reviewed pursuant to Rule 13 of the Tennessee Rules of Appellate Procedure. Hass. v, Knighton, 676 S.W.2d 554, 554-555 (Tenn. 1984). Accordingly, the finding of facts by the trial court is de novo, with a presumption of the correctness. This presumption of correctness can be overcome only if a preponderance of the evidence indicates otherwise. See TENN. R. APP. P. 13(d). Therefore, for Mrs. Mihut to prevail on appeal, she must show that sexual abuse of the children was indicated by a preponderance of the evidence.

**I. Tenn. Code Ann. §37-1-605 and §37-1-403**

Mrs. Mihut's first issue on appeal is based on two sections of the Tennessee Code Annotated; § 37-1-605 and § 37-1-403. The substance of these code sections is to require any person, including the judge of any court, to report potential sexual abuse of a child to the Juvenile Court.[4] Our analysis indicates that application of these sections were not triggered by the evidence presented to the trial court.

In reviewing the evidence, we find it appropriate to note that Mrs. Mihut did not raise the issue of potential sexual abuse at either the temporary custody hearing or the permanent custody hearing. Instead, she asserts on appeal that it should have been obvious to the trial court that a referral to Juvenile Court was appropriate. We do not agree with Mrs. Mihut's assertions for the following reasons.

Mrs. Mihut argues that a fair and unbiased reading of the testimony of Dr. Ross compels the conclusion that Jeremy's acts were potentially of a sexually abusive nature. However, in her characterization of Jeremy's behavior, Dr. Ross stated, "I'm not saying that he's [Jeremy] sexually abusing her [Andrea]." Dr. Ross never suggested that further examination and investigation of any possible sexual abuse was mandated under the circumstances. Dr. Ross did recommend that Jeremy receive counseling, but explained that many children exhibit inappropriate behavior in the midst of a divorce. Additionally, the alleged abuse by one sibling toward the other, occurred in Dr. Ross' office while the children were under Mrs. Mihut's control.

The only other evidence that Mrs. Mihut can point to is the allegation that Mr. Mihut shared a bed with his children while living in the hotel. This allegation, even if relevant, was disproved by the children during their sessions with Dr. Ross.

---

[4]Tenn. Code Ann. § 37-1-605 provides in pertinent part:
(a) Any person, including, but not limited to, any: (5) Judge of any court of the state...who knows or has reasonable cause to suspect that a child has been sexually abused; shall report such knowledge or suspicion to the department in the manner prescribed in subsection (b).
(b)(2) If a law enforcement official or judge becomes aware of known or suspected child sexual abuse...such information shall be reported...
Tenn. Code. Ann. § 37-1-403 provides the same protection, but includes reporting of suspected brutality, abuse, or neglect, in addition to child sexual abuse.

The evidence presented by Mrs. Mihut during the temporary and permanent custody hearings does not even hint at the possibility of sexual abuse of the children. Mrs. Mihut relies solely on her own unfounded accusations and the acting-out behavior of Jeffrey under stressful circumstances. There was no basis for a referral to Juvenile Court on the evidence presented in the trial court. Therefore, sections 37-1-605 and 37-1-404 are not applicable. In addition, we find it appropriate to note that allegations of sexual abuse of a child are very serious and damaging for not only the child, but all parties involved, and should never be used as a last-ditch effort to win custody.

In dealing with an issue of this nature, the court cannot always recognize when abuse occurs even if presented with evidence or allegations of such. However, in a case such as this one, where there is no evidence suggesting abuse, and no allegations of abuse, the court cannot act as clairvoyant. Without an evidentiary foundation, the court cannot predict that sometime, someday, in some manner, abuse may occur.

## II. Abeyance of Custody Proceeding

Mrs. Mihut's second issue on appeal is whether the trial court erred by failing to postpone the determination of final custody until an appropriate investigation into the allegations of child sexual abuse could be completed. Because there were no allegations or any apparent evidence of abuse before the trial court, we find that this issue is meritless. The trial court was not in error in proceeding with the custody determination.

## Conclusion

Based on the foregoing, the judgment of the trial court is hereby affirmed. Costs on appeal are taxed to Mrs. Mihut, for which execution may issue if necessary.

_____

HIGHERS, J.

CONCUR:

_____

CRAWFORD, P.J., W.S.

_____

LILLARD, J.

9